E. B. BELL AND M. V. SWINDELL v. MUTUAL MACHINE COMPANY.

(Filed 17 February, 1909.)

1. **Vessels—Repairing—Negligence—Measure of Damages.**
   The measure of damages for work defectively done on a vessel in caulking and otherwise repairing it is the necessary costs of having the defects repaired and interest on the value of the vessel, hire of employees, and the like, during the additional delay caused by the defective work.

2. **Vessels—Repairing—Negligence—Counterclaim.**
   A counterclaim for damages on account of defective work in caulking and otherwise repairing a vessel may be set up in an action to recover for the work.

3. **Same—Judgment—Estoppel.**
   When it has been adjudicated in a former action that the defendant in this action had performed his contract to repair the vessel of the present plaintiff, the plaintiff is estopped to claim damages arising from defective work alleged to have been done thereon.

4. **Vessels—Repairing—Negligence—Damages Remote.**
   A recovery of damages for destruction by fire of plaintiff's vessel, caused by a leak alleged to have been the result of defendant's defective work in caulking and repairing it, by admitting the water to four barrels of lime stored in it, is too remote, in the absence of notice that the vessel was to be used for carrying lime.

5. 'Vessels—Repairing—Contributory Negligence.

It is incumbent on plaintiff to allege and prove that he used due diligence to discover that defendant's work on his vessel was defective, and that he could not discover the work was so, or that the vessel would leak, until too late to avoid the consequences, in order to recover damages alleged to have resulted from the defective work while the vessel was at sea.

6. Same—Proximate Cause.

To start a vessel on a voyage upon the assumption that defendant had properly caulked and repaired it, without inspection or trial, is such gross negligence on the part of plaintiff as to be the proximate cause of the vessel's destruction by a leak, in an action for damages on the ground that the leak was caused by defendant's defective work.

ACTION tried before *Guion, J.*, and a jury, at Fall Term, 1909, of HYDE.

Defendant appealed.

*Ward & Grimes* and *Walter Jones* for plaintiffs.
*Small, MacLean & McMullan* for defendant.

CLARK, C. J. The plaintiffs placed their schooner, "Melville," on the marine railway of the defendant at Washington, N. C., to be caulked and otherwise repaired. They allege in their complaint that the work was so defectively done that on the voyage the vessel leaked, and the water, finally coming into contact with some barrels of lime which were in the cargo, set fire to the vessel, which was thereby burned. This action is to recover the value of the vessel and cargo.

If the repairs were defectively made, so that the vessel leaked, the damages were the cost of having the defects repaired and interest on the value of the plant (the vessel) and hire of employees, and the like *(Sharpe v. Railroad,* 130 N. C., 613; *Tompkins v. Cotton Mills, ib.,* 347; *Mills v. Railroad,* 119 N. C., 693), during the additional delay thus caused. This direct damage might have been set up as a defense to the action by the defendant in which it recovered of the plaintiffs its charges for making such repairs, and the defendant pleads such judgment as a bar to this action. The plaintiffs contend that this is a counterclaim, which it was optional with them to plead.

It seems to us that while the damages now sued for, if valid, would be a counterclaim, the foundation for them is taken away by the adjudication in the other action that the defendant had performed its contract.

Aside from that, there is no evidence and no allegation that the defendant had notice that the vessel was to be used for carrying lime, nor, indeed, that this was its purpose. The evidence is that four barrels of lime were taken on board among the cargo. It was a remote and not a direct consequence that the water from the leak reached them and set fire to the vessel. The captain testified that he could have saved the vessel except for the fire.

The burning of the vessel from the leak was not in the contemplation of the parties. Even if the vessel had been sunk by the leaks, it was incumbent upon the plaintiffs to allege and to prove that they used due diligence, but did not and could not discover that the work was defective so that the vessel would leak until too late to avoid that consequence. *Railroad v. Hardware Co.,* 143 N. C., 57. The complaint does not aver this, but on the contrary says that the plaintiffs relied on the defendant and had "no knowledge of the breach of duty and violation of contract" by the defendant. To start a vessel on a voyage upon that assumption, without inspection or trial—for none is alleged—was such gross negligence on the part of the plaintiffs as makes that the proximate cause of the disaster. The captain of the vessel, a witness for plaintiffs, testified that he knew the vessel was leaking before he sailed and when he took the four barrels of lime aboard.

In refusing the motion to nonsuit there was

Error.