(Decided 28th June, 1869.)

The Baltimore and Ohio Railroad Company *vs.* John Ritchie and Albert Ritchie, Executors of Albert Ritchie.

*Practice in the Court of Appeals—Rules of Court—Rule to employ New Counsel—Waiver and Estoppel—Demurrer—Joinder of Causes of action—Pleas in Abatement—Abatement of Personal action by the Death of the Plaintiff—Pleadings—Construction of the Charter of the Baltimore and Ohio Rail Road Co., (Act of 1826, ch. 123, sec. 10.)*

Where a defendant has appeared to the action by counsel, and filed pleas, the only power the Court below can rightfully exercise upon his failure to comply with a rule to employ new counsel, is to authorize the plaintiff to proceed *ex parte* with the trial of the cause.

Baltimore and Ohio Railroad Company *vs.* Ritchie.

Where a rule has been laid upon the defendant to employ new counsel, and judgment by default entered against him upon his failure to do so, the subsequent participation of counsel on his behalf at an inquisition taken to assess damages upon the judgment by default, without first moving to strike out the judgment, does not constitute a waiver of any of his rights, or estop him from availing himself of any errors in the previous proceedings in the cause, which may furnish sufficient ground for reversing the judgment.

In an action against a railway company, the declaration contained but one count, alleging injury both to the person and personal property of the plaintiff, by reason of his horse having become frightened and run away in consequence of the defendant's negligence in not having so constructed the bridge over its road, at a turnpike crossing, and in not so placing safeguards in and about it as to prevent horses of persons travelling the turnpike, from being frightened by the passing engines and cars of the defendant. The defendant demurred, assigning four causes of demurrer, the first three of which were founded on the terms of its charter, which was not offered in evidence, and the fourth on the declaration containing two distinct causes of action and being, therefore, double. HELD:

That the demurrer was properly overruled, because the first three causes assigned, consisted of matter which could not be known to the Court officially, and proof of which could only be furnished by the charter of the defendant, and the fourth cause was insufficient.

Although not more than one distinct cause of action can be pleaded in the same count, yet where different and separate injuries have resulted from the same act or cause, the injuries or damages may be united and counted upon in the same count.

A plea in abatement, which does not go to the whole cause of action, must be overruled.

Suits for injuries to the person or character die with the person, and the defendant may take advantage of the death by asking the instruction of the Court, and without pleading it in abatement.

A defendant is not obliged to traverse all the material averments of a declaration, which contains several allegations of distinct facts, proof of all of which is necessary to make up the plaintiff's right to recover; but in each plea he must traverse one or more of the material averments of the *narr.*, and upon the failure of the plaintiff to prove any one of such material averments, the verdict must be for the defendant.

Baltimore and Ohio Railroad Company *vs.* Ritchie.

The charter of the Baltimore and Ohio Rail Road Co. (Act of 1826, ch. 123, sec. 10), provides "That whenever, in the construction of the said road or roads, it shall be necessary to cross or intersect any established road or way, it shall be the duty of the President and Directors of said company so to construct the said road across such established road or way as not to impede the passage or transportation of persons or property along the same." In an action for damages against said company, HELD:

That the above provision did not support an averment in the declaration, "That it was the duty of the defendant to erect and keep a bridge over the rail road at a point where it intersects and crosses the F. & W. Turnpike road, in such manner that all persons might travel along and over said turnpike road with their horses," &c., " free from danger on account of their horses being frightened by the cars and engines of the defendant, used on its railroad at the said point of intersection; and that it was the duty of the defendant to place such safeguards on and about said bridge, as were reasonably necessary to prevent the horses of persons travelling and using the turnpike, from being frightened and alarmed at the cars and engines," &c.

APPEAL from the Circuit Court for Frederick County.

This action was brought against the appellant by Albert Ritchie, the testator of the appellees, to recover damages for injury to his person and property. From the *narr.* it would appear that the plaintiff was crossing, in his buggy, on the 1st of January, 1857, the bridge erected by the defendants over their road, at its intersection with the Frederick and Washington Turnpike road, when the horse, becoming alarmed at the cars and engines, ran off, injuring himself and the vehicle.

The *narr.* charged, that it was the duty of the defendants to erect and keep the bridge in such manner that horses should not be frightened in crossing it; that it was their duty to place safeguards on and about the bridge to prevent horses being frightened; that they did not so erect and keep the bridge; that they placed no safeguards there; that in consequence the horse of the plaintiff took fright and ran away, and the injury happened that was

complained of. To this action the defendants appeared at February Term, 1858.

After the filing of the *narr.* the plaintiff died, and his executors, the appellees, suggested his death, and the case was continued by consent till October Term, 1859, when the defendants pleaded the death of the appellees' testator in abatement, and the appellees moved to strike out the plea because filed after the rule day; and the Court struck it out accordingly.

Whereupon the defendants moved for a rule to show cause why the appearance of the appellees should not be stricken out.

1st. Because if, as alleged, the action was a personal one, it died with the original plaintiff, and his executors could have no right to institute a suit.

2d. Because the action having been brought by the deceased in his lifetime, and dying with him, there was no action to which any one could appear for him after his death.

The appellees appearing to show cause against the rule, moved to have it dismissed, because—1st. It was laid after the fourth term after the suggestion of the death of the original plaintiff; and 2d. Because his death did not abate the suit.

The Court sustaining the motion the defendants demurred.

The demurrer raised the question as to the defendants' obligation to erect and keep the bridge in such manner that horses should not be frightened in crossing it, and to place safeguards to prevent horses being frightened. The demurrer further held the declaration to be bad, because it did not charge the defendants with any unreasonable use of their engines, &c., and again, because it joined two distinct causes of action—injury to person and injury to property.

On joinder in demurrer, the Court overruled it.

The defendants then pleaded—

1st. Not guilty of negligence.    2d. That it was not its duty to erect and keep the bridge and employ safeguards as charged in the narr.    3d. That the facts alleged in the narr. were not true.    4th. That the defendants performed all their duties, and that the appellees' testator was not damnified by any failure in this particular.

The appellees asked the Court to strike out the 1st, 2d and 4th pleas, because they tended to embarrass, prejudice and delay the fair trial of the case; and the same were stricken out by the Court.

This was the condition of the case at October Term, 1859; and a jury being then sworn, the appellees prayed leave to amend; a juror was withdrawn, and the case was continued.

A succession of continuances then took place, and the case became active again only at October Term, 1865.

In the meantime the war had taken place, and Bradley T. Johnson, Esq., the defendants' counsel, had left the State and joined the Confederates.    There was then a rule laid on the defendants to employ new counsel, and a continuance to October Term, 1866.

The defendants did not respond to the rule, and judgment by default was rendered for the appellees; and there was an inquisition, at which new counsel appeared on behalf of the defendant, resulting in a verdict of $1,434.33 and costs, whereupon the defendant took this appeal.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*J. H. B. Latrobe*, for the appellant.

*Albert Ritchie*, for the appellee.

GRASON, J., delivered the opinion of the Court.

This cause being at issue in the Court below, and the

attorney of the appellant having left the State, a rule was laid upon it to employ new counsel, or that judgment would be rendered against it by default. At the October Term, 1866, one year after the above rule was laid, no counsel having appeared, judgment by default was rendered against the appellant " on the rule to employ new counsel." At the October Term, 1867, an inquisition was had, and the damages assessed, at which time an attorney appeared for the appellant, and participated in the proceedings.

The first question to be considered is, whether a Court can legally lay such a rule, or enter a judgment by default against a defendant, who has failed to comply with it when the case is at issue. It was contended by the counsel for the appellee that the Court had the power so to do, and relied upon the case of *Darnall vs. Harrison,* 1 *H. & J.,* 137, in the General Court, as authority for the practice. In that case the rule to employ new counsel not having been complied with, and an affidavit having been filed showing that a copy of the rule had been served on the defendant, the plaintiff, at the same term at which the rule was laid, moved the Court for judgment or trial, and it was " *ruled accordingly.*" The motion being for judgment, *or trial,* it does not appear that the plaintiff would not have been required to proceed *ex parte* with the trial, instead of a judgment by default being entered; for the rule was not enforced, as an appearance was entered for the defendant and a judgment confessed. That case is therefore no authority for the practice contended for by the appellees' counsel. It was further urged that this Court must intend that, in laying the rule and entering judgment by default against the appellant for not having complied with it, the Court below acted in accordance with its established rules, and that, therefore, the judgment by default must stand. It does not appear from the record that there was any such rule of Court, and this

Court will not intend the existence of a rule which is based upon neither justice nor any provision of law. The Court below had no authority to lay such a rule, nor to enter the judgment by default upon a non-compliance with it, and the judgment must be reversed. The appellant had once appeared to the suit by its attorney, and had filed its pleas denying the appellees' right to recover, and upon a failure to comply with the rule to employ new counsel, a rule adopted out of courtesy to suitors, the only power the Court could rightfully exercise was to authorize the appellees to proceed *ex parte* with the trial of the cause. It was also contended by the counsel of the appellees that, as the appellant employed an attorney after the judgment by default, who participated in the proceedings at the time of the taking of the inquisition, without having moved to strike out the judgment by default, all irregularities in the judgment were waived, and that the appellant is estopped from urging any objection to that judgment in this Court. We cannot concur in this view of the case. The appellant had the right to participate in the taking of the inquisition for the purpose of preventing evidence, not legally admissible, from being submitted to the consideration of the jury, as well as for the purpose of endeavoring to reduce the damages. This it had a right to do without waiving any of its rights, and without being estopped thereby from availing itself of any errors in the previous proceedings in the cause, which may furnish sufficient cause for reversing the judgment. As the judgment by default was erroneously entered, and the case may have to be remanded, it becomes necessary for this Court to examine the other proceedings in the cause, for the purpose of ascertaining whether there is any error in them.

The declaration contains but one count, and alleges injury both to the person and personal property of the plaintiff, by reason of his horse having become frightened and

having run away, in consequence of the appellant's negligence in not having so constructed its bridge, and in not placing safeguards on and about it, for the purpose of preventing horses of persons travelling the turnpike road from being frightened. To this declaration a demurrer was filed containing and assigning four causes of demurrer. We are of opinion that the demurrer was properly overruled, because the first three causes assigned consisted of matter which could not be known to the Court officially, and proof of which could only be furnished by the charter of the appellant, which was not offered in evidence, and because the fourth cause was not sufficient. It is true that not more than one distinct cause of action can be pleaded in the same count, yet where different and separate injuries have resulted from the same act or cause, the injuries or damages may be united and counted upon in the same count. There was, therefore, no error in overruling the demurrer.

It was contended by the counsel of the appellant, that the Court below erred in striking out its pleas in abatement, and overruling its motion to strike out the appearance of the executors of Albert Ritchie, by whom the suit had been instituted in his lifetime, and to dismiss the suit. The plea in abatement was not filed within the time required by the rule of the Court; and even if it had been, it did not go to the whole cause of action, and must therefore have been overruled. The motion to strike out the appearance of the executors, and dismiss the suit, was, in substance and effect, a plea in abatement, and was therefore properly overruled. We think it perfectly clear, however, that the suit, so far as the injury to the person of the plaintiff was involved, abated without a plea in abatement, and that the appellant could have taken advantage of it by asking the instruction of the Court. Suits for injuries to the person or character die with the person, and cannot be maintained by the representatives of the

deceased party. Before the Acts of 1785, chap. 80, and 1798, chap. 101, sub-chap. 14, sec. 4, all personal actions abated by the death of a party, and it was necessary for his representatives to commence the action anew; and the object of those Acts was to prevent this inconvenience and delay, and to enable the representatives of deceased parties to prosecute such actions as had been instituted by their decedents, during their lives, and which did not die with the person.

Those Acts never were intended, however, to prevent the abatement of actions which died with the person. The appellees were therefore not entitled to recover for the alleged injuries to the person of their decedent, and the appellant's proper means of availing of this was not by a plea in abatement, which went only to part of the cause of action, but by asking the instruction of the Court to the jury.

Upon motion of the appellees, the Court below struck out the first, second, and fourth pleas of the appellant. The first two directly traversed one or more material allegations of the declaration, were issuable pleas, and, if found for the appellant, the verdict must have been in its favor. A defendant is not obliged to traverse all the averments of the declaration, which contains several allegations of distinct facts, proof of all of which is necessary to make up the plaintiff's right to recover; but in each plea he may traverse one or more of the material averments of the *narr.*, and upon the failure of the plaintiff to prove any one of such material averments, the verdict must be for the defendant. Such was the character of the first and second pleas, filed by the appellant in this case, and struck out by the Court. They should have been permitted to stand, and the appellees ought to have been required to reply to or join issue upon them. The fourth plea was argumentative and defective, and there was no error in striking it out.

Baltimore and Ohio Railroad Company *vs.* Ritchie.

The declaration charges, that it was the duty of the appellant to erect and keep a bridge over the railroad, at the point where it intersects and crosses the Frederick and Washington Turnpike road, in such manner that all persons might travel along and over said turnpike road with their horses, &c., free from danger, on account of their horses being frightened by the cars and engines of the appellant, used on its railroad, at the said point of intersection; and that it was the duty of the appellant to place such safeguards on and about said bridge as were reasonably necessary, to prevent the horses of persons travelling and using the turnpike, from being frightened and alarmed at the cars and engines, &c. The charter of the appellant was not offered in evidence, nor is it contained in the record, nor, as it is a private act, can this Court officially take notice of it. It was, however, referred to in the course of the argument, and we have examined it, and we have no hesitation in saying, that if it were properly before us for our construction, it imposes upon the appellant no such duties as those alleged in the *narr.* The 10th section of the Act of 1826, chap. 123, by which act the appellant was chartered, provides " that whenever in the construction of the said road or roads, it shall be necessary to cross or intersect any established road or way, it shall be the duty of the president and directors of said company so to construct the said road across such established road or way, as not to impede the passage or transportation of persons or property along the same."

In view of the duties imposed by its charter upon the appellant, we are clearly of opinion that the appellees cannot recover, under the pleadings in this case, either for the injury to the person or property of the original plaintiff.

The judgment of the Court below will be reversed, with leave to the appellees to take out a procedendo should they desire it.

*Judgment reversed.*

(Decided 30th June, 1869.)